UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
IN RE:

    AL M. GLENN and                                     Cases No. 09-63407
    CHRISTA L. GLENN,                               Chapter 7

                Debtor(s).
---------------------------------------------------------
IN RE:

    JOSEPH V. NEVE-RINALDO and                Case No. 09-63416
    JENNIFER R. NEVE-RINALDO,                 Chapter 7

                Debtor(s).
---------------------------------------------------------
APPEARANCES:

Frederick W. Murad, Esq.
*Attorney for Al M. and Christa L. Glenn*
291 Genesee Street
Utica, New York 13501

David J. Gruenewald, Esq.
*Attorney for Joseph V. And Jennifer R. Neve-Rinaldo*
P.O. Box 69
Manlius, New York 13104

Thomas Paul Hughes, Esq.
*Chapter 7 Trustee*
23 Oxford Road
New Hartford, New York 13413

Hon. Diane Davis, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      Presently before the Court are objections filed by Chapter 7 Trustee Thomas Paul Hughes, Esq. ("Trustee") in two cases filed under chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1532 ("Code"), namely *In re Al M. and Christa L. Glenn*, Case No. 09-63407, and *In re Joseph V. and Jennifer R. Neve-Rinaldo,* Case No. 09-63416 (collectively, the "Debtors").

The Trustee objects to the Debtors' claim of a cash exemption in their respective income tax refunds.

The Trustee's objections were heard at the Court's regular motion calendar in Utica, New York, on March 11, 2010. Following oral argument by the parties, the Court indicated it would take the Trustee's objections under submission for a decision in both cases.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of these contested matters pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(A), (B) and (O).

## FACTS

I.    Al M. Glenn and Christa L. Glenn (collectively, the "Glenns") (Case No. 09-63407)

The Glenns filed a voluntary petition pursuant to chapter 7 of the Code on December 8, 2009. Since the Glenns rent, they are not eligible to claim a homestead exemption. Instead, the Glenns claimed an exemption of $2,500.00 in their 2009 state and federal tax refunds on Schedule C. On February 9, 2010, the Glenns filed an Amended Schedule C claiming a $3,000.00 exemption in the tax refunds, which they again amended two days later, indicating a claim of a $5,000.00 exemption in the tax refunds.

According to Schedule I, Mrs. Glenn earned gross income of $2,257.47 per month at the time of filing. Mrs. Glenn's employment was the main source of income for the Debtors and

their two year old daughter. Mr. Glenn was unemployed and listed $100.00 in income per month, allegedly from odd jobs. According to the Glenns' affidavit, sworn to on February 25, 2010 (Dkt. No. 24), Mr. Glenn has been caring for their daughter since he became unemployed in early 2009, thus eliminating the expense of daycare.

The Glenns have been married for five years and during that time have filed joint tax returns each year. *Id.* According to their affidavit, any refunds they received were used to pay joint debts and to purchase clothing and other necessities for their daughter. In their affidavit, the Glenns indicate that they maintained a joint bank account for the first few years of their marriage, but it was later terminated.[1] Beginning in early 2009, a portion of Mrs. Glenn's pay was deposited into a checking account maintained solely in Mr. Glenn's name which "is used primarily to pay the auto loan." *Id.*

As noted previously, the Debtors claim a cash exemption of $5,000.00 in their 2009 tax refunds, which they anticipate should be about $7,743.00. In his objection, filed on February 16, 2010, the Trustee asserts that Mrs. Glenn earned $20,790.00 and Mr. Glenn earned $1,205.00 in 2009. According to the Trustee, Mrs. Glenn's percentage of taxable income for 2009 was approximately 91% of the household income, and she is entitled to an exemption of $2,500.00; however, the Trustee takes the position that Mr. Glenn should be allowed an exemption of only $696.87 or approximately 9% of their refund.

---

[1] There appears to be some discrepancy between their sworn affidavit and the schedules filed with their chapter 7 petition. According to Schedule B, at the time they filed their petition on December 8, 2009, the Glenns listed two joint bank accounts with First Source, one with $10.00 on deposit and another with $20.00 on deposit.

4

II.    <u>Joseph V. Neve-Rinaldo and Jennifer R. Neve-Rinaldo (collectively, the "Neve-Rinaldos") (Case No. 09-63416)</u>

The Neve-Rinaldos filed a voluntary petition pursuant to chapter 7 of the Code on December 9, 2009. On Schedule C of their petition, the Neve-Rinaldos claimed an exemption of $4,950.00 in their 2009 state and federal tax refunds. They have not claimed a homestead exemption in their residence. On Schedule B, they list $20.00 in cash and $25.00 on deposit in joint checking and savings accounts at Rome Savings Bank, both of which they claim as exempt.

According to Schedule I, Mrs. Neve-Rinaldo was unemployed, and Mr. Neve-Rinaldo earned gross income of $3,333.00 per month at the time of filing. His employment was the sole source of income for the Debtors and their three children, ranging in age from one month to eight years old. As noted previously, the Neve-Rinaldos claim a cash exemption of $4,950.00 in their anticipated 2009 tax refunds. According to the Trustee, the refunds should be apportioned in accordance to the taxable income attributable to each debtor. As Mr. Neve-Rinaldo was the only one with taxable income in 2009, the Trustee contends that they are entitled to a maximum of $2,475.00 from the 2009 tax refunds as being exempt because Mrs. Neve-Rinaldo has no property interest in the 2009 tax refunds, despite the fact that the Neve-Rinaldos filed a joint return.

5

**DISCUSSION**

Exemption statutes are to be construed liberally in favor of a debtor. *KLC, Inc. v. Trayner*, 426 F.3d 172, 176 (2d Cir. 2005); *In re Moulterie*, 398 B.R. 501, 504 (Bankr. E.D.N.Y. 2008) (citations omitted); *see also In re Caraglior*, 251 B.R. 778, 783 (Bankr. D. Conn. 2000) (noting that "whenever the claim to an exemption can be brought within the purpose and intent of the statute by a fair and reasonable interpretation, the exemption should be allowed"). Thus, in this case it is the Trustee who bears the burden of proof to establish that the exemption is improper. *Moulterie*, 398 B.R. at 504.

In both the cases now under consideration by this Court, the Trustee takes the position that the refunds should be apportioned based on the Debtors' respective earnings and, therefore, that each of the debtors should be allowed to exempt up to $2,500.00 of his/her proportionate share of the refunds. In the Glenns' case, for example, Mrs. Glenn earned 91% of the income in 2009 and, therefore, after apportioning 91% of the anticipated tax refund of $7,743.00 or $7,046.00, she is entitled to claim an exemption of $2,500.00. Since Mr. Glenn's proportionate share is only 9%, he may only claim as exempt $696.87 based on his limited earnings in 2009. In the case of the Neve-Rinaldos, the Trustee argues that only Mr. Neve-Rinaldo is entitled to claim an exemption of $2,500.00 in their tax refunds since he was the only one with income in 2009.

As the Trustee acknowledges, the courts have followed one of three different approaches in allocating tax refunds for purposes of either claiming a cash exemption or for turnover of the funds sought by a chapter 7 trustee pursuant to Code § 542. *See In re Spina*, 416 B.R. 92, 96

6

(Bankr. E.D.N.Y. 2009); *In re Gartman*, 372 B.R. 790, 792 (Bankr. D.S.C. 2007); *In re Innis*, 331 B.R. 784, 786-87 (Bankr. C.D.Ill. 2005) The analysis utilized by the courts addressing both an objection to an exemption or a motion seeking turnover of the refunds is the same. *See id.* at 787.

The first approach assumes that as long as the spouses have filed a joint tax return, the tax refund should be allocated between the spouses in proportion to their tax withholdings. *See In re Hejmowski*, 296 B.R. 645, 646, n.1 (Bankr. W.D.N.Y. 2003) (citations omitted). The Trustee advocates this approach.[2]

The second approach involves allocating the joint tax refunds proportionately based on the amount of income earned by each spouse. *Id.* (citations omitted). Under the third approach, the joint tax refunds are divided equally between the spouses unless their actual financial practices warrant a different conclusion (the "50/50 Refund Rule"). Debtors' attorneys advocate this latter approach.

Indeed, it is the latter approach advocated by the Debtors that has been accepted by the bankruptcy courts in New York, namely, *Spina*, *supra*, 416 B.R. 92; *In re Marciano*, 372 B.R. 211 (Bankr. S.D.N.Y. 2007), *In re Barrow,* 306 B.R. 28 (Bankr. W.D.N.Y. 2004) and *Hejmowski, supra*. Of the four cases, only *Hejmowski* involved joint debtors. In both *Marciano*

---

[2] The Trustee cites to *In re Patterson*, Case No. 96-65888, Adv. Pro. 98-70807, slip op. (Bankr. N.D.N.Y. Feb. 25, 1999) in support of his position. In that case, the Honorable Stephen D. Gerling was asked to revoke the debtor's discharge based on her failure to comply with an order of the Court requiring that she file tax returns and turn over a portion of the tax refunds. The trustee argued that "the refunds should be treated as owned jointly by both parties to the return, with one-half being due to the bankruptcy estate." *Id.* at 5. Judge Gerling observed that the trustee had offered no evidence, however, to support her position and declined to require that the debtor turn over any monies since it was solely the nondebtor spouse whose earnings were the basis for the refund.

and *Spina,* both cited by the Glenns' attorney, it was the debtor, filing individually, who was the primary wage earner. In *Barrow* it was the nondebtor spouse that generated most of the income. In all four cases, the courts concluded that the proper approach to be taken was the 50/50 Refund Rule. *See, e.g. Marciano*, 372 B.R. at 216 (stating that "a presumption of equal ownership of joint tax refund is the most equitable outcome"); *Hejmowski*, 296 B.R. at 650 (concluding that "the presently unemployed spouse's claim to an ownership share of the tax refund is not based on the 'mere' filing of a joint tax return, but is codified in the matrimonial laws of the State of New York and is recognized by both spouses in their actual financial practices of long standing"); *Spina*, 416 B.R. at 99 (examining both New York Domestic Relations Law and New York Tax Law, as well as the Internal Revenue Code, and concluding that "it seems entirely consistent for spouses who file joint returns to share equally in any tax refund return, regardless of who earned how much of the taxable income, and regardless of who generated the claimed deductions. Thus, any tax refund presumptively belongs to the spouses equally."); and *Barrow*, 306 B.R. at 32 (observing that "[t]he presumption of equal ownership applies a reasonable and fair method for allocating a joint tax refund. This standard also avoids difficult issues of proof, particularly in the typical case where income or withholding ratios present an incomplete and inaccurate basis for attribution").[3]

A similar approach was taken by the court in *In re Garbett*, 410 B.R. 280 (Bankr. E.D.

---

[3] The court in *Barrow* pointed out that "[i]n many ways, the tax consequences of a joint filing exhibit no proportionality to respective levels of withholding and income. Joint tax filers may claim an exemption for each spouse, thereby effectively allowing them to use that exemption to offset income of the spouse with higher earnings. Similarly, the losses or deductions of one spouse may favorably impact their joint taxable income . . . It is simply inaccurate to say that the greater refund is attributable only to the income and withholdings of the employed spouse." *Barrow*, 306 B.R. at 31.

Tenn. 2009). In that case, the chapter 7 trustee objected to the debtors' claim of an exemption in a $4,797.00 tax refund. The withholdings on which the refund was based were attributed to the earnings of Mrs. Garbett and, as is the case presently under consideration by this Court, the trustee argued that "no portion of the refund should be allowed as exempt by Mr. Garbett." *Id.* at 282. Of note was the fact that the refund consisted of only $489.00 withheld from Mrs. Garbett's wages, along with an earned income credit of $4,170.00, and an additional child tax credit of $287.00, less a $149.00 tax for an early withdrawal form the debtors' IRA. *Id.* at 283. The debtors argued that the tax refund was held by them as tenants by the entireties and that each was entitled to claim an exemption in one-half of the proceeds. *Id.* at 285. Ultimately, the court concluded "that the 50/50 Refund Rule, subject to rebuttal based on the circumstances of each individual case, is most compatible with Tennessee law." *Id.* at 285-86.

In reaching its conclusion, the court in *Garbett* examined several cases, including *In re Edwards*, 400 B.R. 345 (D. Conn. 2008), cited by the Trustee herein in support of his position, and found that "the laws in those states do not fall in line with the law in Tennessee that, absent evidence to the contrary, property owned by married persons jointly is held as entireties property . . . ." *Id.* at 287. The court pointed out that the district court in *Edwards* relied on Connecticut property laws that expressly emphasized the independent property rights of husband and wife. However, in Tennessee the court noted that "there is a presumption in Tennessee that personal property acquired after marriage is held by both spouses as tenants by the entireties, 'a form of co-ownership held by husband and wife with right of survivorship . . . [involving] the unities of time, title, interest, and possession, as well as the husband and wife unity of ownership.'" *Id.* at 287-88 (citation omitted).

A similar conclusion was reached by the court in *In re Trickett*, 391 B.R. 657 (Bankr. D. Mass. 2008). Applying the law of Massachusetts, the court found "that in Massachusetts, 'the concept of marriage as a shared partnership is a broad principle that is now widely accepted and used by courts as part of their decisional framework.'" *Id.* at 662, quoting *In re Innis*, 331 B.R. 784, 788 (Bankr. C.D.Ill. 2005). The court stated, "[t]he test adopted by this Court provides a bright-line rule that is easy to understand and apply. Moreover, it 'provides guidance, in advance, to debtors and their attorneys that allows for effective prebankruptcy planning.'" *Id.,* quoting *Innis*, 331 B.R. at 789.

The court in *Innis* involved a single debtor and a trustee seeking the nonexempt portion of federal and state income tax refunds emanating from the filing of joint returns. The court agreed with the analysis found in *Barrow*. In concluding that the equal ownership approach was most applicable, it observed that (1) attendant to the burden of tax liability should be the benefit of sharing in a tax refund; (2) the importance of recognizing a spouse's non-economic contribution to the family; and (3) the recognition in most states that postmarriage tax refunds constitute "marital property." *Id.* at 787. Rather than relying on the debtor's argument in that case, which was based on equitable distribution in the context of the dissolution of a marriage, the court emphasized that

> the concept of marital property is properly viewed as a reflection of the public policy of the State of Illinois that marriage is a shared partnership. It follows that where the right to an income tax refund accrues during the parties' marriage, the refund is treated as marital property without regard to whose income or other tax attributes generated the refund.

*Id.* at 788. The court also expressed the view that "crafting a rule that requires the parties and the courts to delve into the gnarly minutiae of hypothetical tax returns, on a case by case basis,

10

would be a mistake." *Id.*

In addition, while relying on the analysis in *Barrow*, the court declined to accept the view that any presumption of equal ownership of a joint tax refund could be rebutted by evidence of the couple's financial history. *Id.* at 789. Instead, the court indicated that any rebuttal evidence would be limited to domestic relations court orders and enforceable contracts between the spouses, thereby eliminating uncertainty and simplifying any litigation that might occur. *Id.*

In *Edwards*, a case relied on by the Trustee in the matter *sub judice*, the district court expressly drew a distinction between the "inherent differences between New York and Connecticut law. *Edwards*, 400 B.R. at 347, citing to the findings in *Marciano*, 372 B.R. 211; *Barrow*, 306 B.R. 28; and *Hejmowski*, 296 B.R. 645. Unlike the laws of New York, it concluded that "Connecticut property law provides bankruptcy courts in this district with sufficient guidance to apply the majority approach." *Id.* Thus, the court in *Edwards* opted to allocate the prepetition portion of the tax refund(s) between the debtor and her nondebtor spouse based on the income tax withholdings of each spouse, proportionally. *Id.* at 58.

A similar approach was taken by the court in *In re Carlson*, 394 B.R. 491 (8th Cir. BAP 2008). In *Carlson* the court applied Minnesota law to the claims of exemption by joint debtors, noting that the state was "neither a community property nor a tenancy by entireties state, and, in general, has no presumption of equal ownership between spouses." *Id.* at 494. Under Minnesota law the presumption exists that spouses own property separately unless expressly conveyed to the other spouse. *Id.* at 496. Ultimately, the court concluded that in Minnesota "a spouse who did not pay any of the withholdings to which a joint income tax refund is attributable has no ownership interest in the refund." *Id.* at 497. Accordingly, the court held that Mrs. Carlson was

11

not entitled to claim an exemption in the refunds which resulted solely from her husband's withholdings. *Id.*

After reviewing the case law, the Court observes that property interests in this case are based on New York law, not Connecticut law as was the case in *Edward* and not Minnesota law, as was the case in *Carlson*. The Court has reviewed Judge Gerling's decision in *Patterson,* as noted in footnote 2, *supra*. In that case, the focus was on Code § 727(a)(6)(A) and § 727(d) and whether to revoke the debtor's discharge due to her failure to provide the trustee with copies of her tax returns and her failure to turnover refunds. The debtor's husband ultimately provided the returns as well as a check based on the debtor's prorated share of the refunds based on their respective incomes. According to the testimony of the Pattersons' accountant at the trial, the excess withholdings were based on Mr. Patterson's salary and had nothing to do with the monies withheld from his wife's salary. *Patterson*, slip op. at 4. In fact, if she had filed individually, he testified that the withholdings from her salary were inadequate to satisfy her tax liability. *Id.* at 5. In his posttrial memorandum of law, the trustee made the argument that "'the refunds should be treated as owned jointly by both parties to the return, with one-half being due to the bankruptcy estate.'"

Judge Gerling accepted that testimony of the accountant without any legal analysis, noting that the trustee had failed to present any evidence to the contrary and found that there were no refunds to turn over to the trustee. *Id.* at 8. Judge Gerling, in a single ordering paragraph dismissed the trustee's complaint insofar as it sought revocation of the debtor's discharge. For purposes of the matter herein, the Court notes that the issue of exemption was not addressed in *Patterson*. The Court concludes that Judge Gerling's finding in *Patterson* in 1999

that the debtor had no property interest in the tax refunds at the time of filing her petition was merely *dicta* and is not binding on this Court without the necessary legal analysis.

The Court sees no reason to alter the approach taken by the courts in the four New York cases discussed previously, beginning with *Hejmowski* in 2003, as well as that adopted by the courts in *Trickett*, *Garbett* and *Innis*.  Accordingly, the Court concludes that it will adopt the 50/50 Refund Rule.  In addition, the Court finds merit in the rationale set forth by the court in *Innis* in declining to accept the view that any presumption of equal ownership of a joint tax refund could be rebutted by evidence of the couple's financial history.  There should be no need to inquire beyond the fact that the spouses voluntarily elected to file a joint return.  This Court agrees that only in very unusual circumstances,  including the existence of a domestic relations court order or an enforceable prepetition contract between the spouses indicating otherwise, will it consider evidence to the contrary.

## **CONCLUSION**

Based on the foregoing, it is hereby

ORDERED that the Trustee's objection to the exemption claim in the tax refunds of the Glenns is denied; and it is finally

ORDERED that the Trustee's objection to the exemption claim in the tax refunds of the Neve-Rinaldos is denied.

Dated at Utica, New York
this 19th day of May 2010                /s/ Diane Davis
                                                   DIANE DAVIS
                                                   U.S. Bankruptcy Judge